IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCO ANNONI, on behalf of himself and others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>FYISMS.COM, LLC,<br>    Defendant. | )<br>) 1:11-cv-1603<br>)<br>) Judge Feinerman<br>)<br>)<br>)<br>) JURY DEMANDED<br>) |

**AMENDED COMPLAINT**

**CLASS ACTION**

1.  Plaintiff Marco Annoni brings this class action complaint against defendant FTsms.com, LLC ("FYIsms") to stop defendant's practice of making unsolicited "junk" or "spam" text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct.

2.  Plaintiff seeks damages for himself and the class pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ( "TCPA"), which prohibits unsolicited voice and text calls to cell phones. Plaintiff also seeks an injunction requiring Defendant to cease all wireless spam activities.

**PARTIES**

3.  Plaintiff Marco Annoni is an individual who lives in Cook County.

4.  Defendant FYIsms.com, LLC is a company that appears to specialize in sending text messages to notify people of "up to the minute" recent events. It is incorporated in Delaware, and operates out of Arizona. FYIsms is a "shell" corporation, with no employees. It is a subsidiary of Eye Level Holdings, LLC, which owns and operates several sms text message businesses, including

1

companies with names such as "Hot Hot News," "General Texting," "Standard Texting," and "Gamer Data." The names of these companies are not alleged herein precisely, and are based upon the recollection of Eye Level Holdings, LLC and FYIsms.com, LLC's Chief Financial Officer, Emmett Mitchell, during his deposition.

5.     Eye Level Holdings, LLC and FYIsms.com, LLC share common ownership and operations. Eye Level Holdings, LLC operates each of the various texting subsidiaries through administration of services such as customer service and tech support.

6.     Exhibit A contains defendant's record of the six text messages it sent to plaintiff.

**JURISDICTION AND VENUE**

7.     This Court has federal question subject matter jurisdiction over this pursuant to 28 U.S.C. § 1331. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

8.     If *Brill* were to be abrogated or overruled, the Court also has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2)(A), because the matter in controversy is believed to exceed the sum or value of $5,000,000 for the class, exclusive of interests and costs, and is a class action in which a member of the plaintiff class is a citizen of a state different from the defendant.

9.     Venue is proper because a substantial portion of the events complained of occurred in this District.

**SERVICES OF FYIsms.com, LLC**

10.     FYIsms offers a service whereby consumers may enter their cell phone number into a website, and for a monthly fee between around $7 - $10 per month, have the right to text questions to FYI, and receive responses with answers.

11. For example, if a subscriber wanted to know more about the subject of "tuna," then that subscriber would text the word "tuna" to FYI.

12. When FYI receives a query like "tuna" above, its system of hardware and software, including servers and a database, automatically and instantaneously does a query for the subject received from the subscriber.

13. If the requested subject (e.g. "tuna") is contained in FYI's database, then FYI automatically sends a text message back to the subscriber with information about the subject. There is no human intervention involved with the above scenario, other than the subscriber sending a text message to FYI asking for information.

### SUBSCRIBING TO FYIsms.com, LLC

14. FYIsms has what it calls a "double opt-in" subscription process.

15. During the first part of the subscription process, a consumer typically enters his cell phone number on an internet website such as www.fyisms.com, or www.great.recipes.net.

16. The cell phone number is then automatically transmitted to FYIsms, or to its parent company Eye Level Holdings, LLC.

17. When the phone number is received by FYIsms, a "scrub" is performed by defendant or its parent company through third party Neustar, to determine the cell phone carrier for the number received.

18. The fee structure for FYIsms' service depends upon the subscriber's cell phone carrier, and billing for the service is administered through the cell phone companies.

19. The information received from Neustar regarding the potential subscriber's cell phone carrier is then automatically plugged into FYIsms' fee schedule, and a text message such as

that which is attached as Exhibit A is automatically sent by FYIsms to the phone number that was entered into the website.

20. The text message defendant sends new potential subscribers at this point is:

**2127 = Password.  Unlimited Access & Alerts for $9.95/mo. Help 4 Help. Customized Alerts 4 Your Favorite Topics by FYISMS.com. Enter Password Online: 2127**

FYI sent such a message to plaintiff.  <u>Exhibit A</u> at row 1.

21. There is no human involvement with the sending of texts like that which is described above, other than a potential subscriber entering his or her cell phone number into a website.  The sending of the text message is automatic, and done without any human intervention at all on FYIsms' part.

22. Once a person enters the "password," that customer is then an FYIsms customer, and will be charged accordingly through their cellular telephone company.

23. If FYIsms does not receive a text message with the password, or receive an opt-in otherwise, then FYIsms sends follow-up text messages to the cell phone.  The messages in the middle four rows of Exhibit A represent follow-up messages.

24. The four follow-up messages sent to plaintiff were:

**Reply "Y" to Get Unlimited Access to fyisms.com Interactive Content & web $9.99/mo. Txt stop 2 end messages Final Step.  Reply "Y" !**

25. It is the policy and practice of FYIsms to send several follow-up messages to a cell phone number that FYI has received over the internet.

<u>**UNSUBSCRIBING, or , "STOPPING" TEXT MESSAGES**</u>

26. As suggested in the follow-up messages, a recipient of unwanted text messages can indicate to FYIsms that the messages are not wanted by texting "STOP" back to FYI.

27. Plaintiff did this on December 31, 2010.

28. When FYIsms receives a text message that says "STOP" from a phone number in its database that is receiving follow-up messages, it automatically sends a confirmation text message back to the sender of the STOP request.

29. The confirmation text message FYIsms sent to plaintiff in this case states:

**You have stopped messages and will no longer be contacted. You have not been charged. Fyisms.com**

Exhibit A, at row six.

30. The confirmation text is fully automated by FYIsms. In other words, no human being on FYIsms' side of the transaction does anything at all in order for the confirmation email to be sent.

### FYIsms' EQUIPMENT

31. There is apparently some dispute as to what TCPA standard and definition applies to "automatic telephone dialing system."

32. The statute defines "automatic telephone dialing system" as equipment that has the "capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1).

33. The Federal Communications Commission has stated that any equipment that has the "capacity to dial numbers without human intervention" should be considered a "predictive dialer," and all predictive dialers are regulated by the TCPA section 227(b). *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, CG Docket 02-278, available at 2003 WL 21517853, at ¶132 (July 3, 2003); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, CG 02-278, at ¶ 13 (Jan. 4, 2008).

34. Typically, federal agency regulations are subject to review by a federal District Court pursuant to the "familiar" *Chevron* deference test. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). However, because of the Administrative Orders Review Act, also known as the "Hobbs Act," final orders by the FCC are <u>not</u> reviewable by any Court other than through an action against the FCC that originates in the United States Court of Appeals (except the Federal Circuit), or through a motion for reconsideration to the FCC itself. 28 U.S.C. 2342; *Prism Business Media, Inc.*, 606 F.3d at 446.

35. Thus, the controlling standard for whether telephone equipment is an "automatic telephone dialing system" and regulated by the TCPA in this case is the FCC definition, "capacity to dial numbers without human intervention."

36. The equipment FYIsms used to send each of the six text messages to plaintiff had the "capacity to dial numbers without human intervention."

37. Additionally, according to deposition testimony of FYIsms and Eye Level Holdings, LLC employees not yet transcribed at the time of filing this document, the equipment FYIsms used to send each of the text messages identified in Exhibit A, and other messages to the class members, had the capacity to store or produce telephone numbers to be called, and the capacity to do so randomly or sequentially; to dial such numbers and to send text messages to those numbers.

38. In other words, the equipment FYIsms used to send the text messages to plaintiff and the class satisfy both standards for "automatic telephone dialing system."

### COUNT I – TCPA – CLASS COUNT

39. Plaintiff incorporates all previous paragraphs.

40. This Count pertains to text messages FYIsms sent after having received a "STOP" instruction, only.

41. FYIsms sent plaintiff and others, as a matter of course, text messages after they had requested that the text messages stop.

42. These text messages violated the TCPA, 47 U.S.C. 227(b)(1)(A)(iii), because they were sent using an "automatic telephone dialing system" as described above.

## **CLASS ALLEGATIONS**

43. Plaintiff Annoni brings this action on behalf of himself and a class pursuant to Fed.R.Civ.P. 23.

44. The class consists of all persons who, between and including March 7, 2007 and March 7, 2011, received a text message from FYIsms.com on their cellular telephone that was sent after FYIsms had received a text message from the class member indicating that the class member desired that FYIsms stop sending him/her text messages.

45. Upon information and belief, there are more than one hundred persons in the class defined above.

46. Common questions of law and fact exist as to all members of the Class; and these common questions predominate over questions affecting individual members. Common questions for the Class include:

    (a)    Is Defendants' conduct and equipment governed by the TCPA? and

    (b)    Are the class members entitled to treble damages based on the willfulness of Defendants' conduct?

47.  Plaintiff will fairly and adequately protect the interests of the Class, his claims are typical of the claims of the members of the respective classes, and he has retained counsel competent and experienced in class action litigation.

48.  A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective classes is impracticable, (b) many class members are unaware that their rights have been violated, and (c) many members of the class likely cannot vindicate their rights through individual suits because their damages are small relative to the burden and expense of litigating individual actions.

49.  FYIsms continues the illegal conduct complained of herein, and should therefore be enjoined from future violations.

WHEREFORE, plaintiff Marco Annoni requests that this Court enter judgment in favor of himself and the class and against FYIsms.com, LLC for:

    a.  An order certifying the Class as defined above;

    b.  An award of actual and/or statutory damages;

    c.  A declaration that defendant's conduct violates the TCPA and an injunction requiring Defendants to cease all wireless spam activities;

    d.  Reasonable attorney's fees and costs as part of a common fund award, if any; and

    e.  Such further and other relief the Court deems appropriate.

## COUNT II – TCPA - INDIVIDUAL

50.  Plaintiff Annoni incorporates by reference all previous allegations.

51. Plaintiff never signed up to receive text messages from defendant.

52. Nevertheless, defendant sent plaintiff five text messages in addition to the one sent after plaintiff asked for the text messages to stop, which is part of Count I, above.

53. Defendant used an automatic telephone dialing system to send these text messages, in violation of the TCPA, 47 U.S.C. 227(b)(1)(A)(iii).

WHEREFORE, plaintiff Marco Annoni requests that this Court enter judgment in favor of himself for:

    a. An award of actual and/or statutory damages;

    b. A declaration that defendant's conduct violates the TCPA and an injunction requiring Defendants to cease all wireless spam activities; and

    c. Such further and other relief the Court deems appropriate.


Respectfully submitted,

Alexander H. Burke


**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

**JURY DEMAND**

Plaintiff requests a trial by jury.

Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all messages, recordings, data, documents and all other tangible things that relate to plaintiff or the putative class members, the events described herein, any third party associated with any communication, sms, call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

Alexander H. Burke

# Exhibit A

