IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCO ANNONI, on behalf of himself and others similarly situated,<br><br>        Plaintiff<br><br>   v.<br><br>FYISMS.COM, LLC,<br><br>        Defendant. | Case No. 1:11-cv-1603<br>Honorable Gary Feinerman<br><br>**DEFENDANT FYISMS'S OPPOSITION TO PLAINTIFF'S 56(d) MOTION**<br><br>(Oral Argument Requested) |

## I.
## INTRODUCTION

On March 7, 2011, plaintiff Marco Annoni filed this case alleging that FYIsms violated section 227(b)(1) of the Telephone Consumer Protection Act ("TCPA") when it purportedly sent plaintiff text messages using an automatic telephone dialing system ("ATDS").

Specifically, plaintiff's claims are based solely on the fact that FYIsms purportedly sent plaintiff a few "unsolicited" text messages. [*See* Second Amended Complaint ¶¶ 51–53.] FYIsms, however, sends text messages only to consumers who sign up to receive these premium text messages, which include information on various topics like recipes. [FYIsms's Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. ("SOF") ¶ 15.] The few text messages at issue here thus were not part of some mass mailing. [*Id*. at ¶ 21.] On the contrary, plaintiff's mobile number was, in fact, inputted into FYIsms's website by someone with IP address 173.202.226.157. [*Id*. at ¶ 16.] Curiously, plaintiff refuses to provide information about his IP address, despite numerous requests. [*See* FYIsms's Mot. for Summ. J. at 2, n.1.]

After realizing FYIsms does not send mass "junk" messages, plaintiff's counsel amended the complaint to seek recovery on behalf of a putative class who submitted a text requesting that

1

FYIsms stop sending the solicited text messages, and in response received a confirmation email that the particular services requested would be stopped. [*See* Second Amended Complaint, ¶ 44.] Such confirmation text messages are required, however, by industry guidelines set forth by the Mobile Marketing Association. *See* Mobile Marketing Association, U.S. Consumer Best Practices 15, §§ 1.6-4–1.6-6, Version 6.0 (Mar. 1, 2011), *available at* www.mmaglobal.com/bestpractices.pdf. Plaintiff's counsel nevertheless insists on pursuing this case.

On April 15, 2011, FYIsms moved for summary judgment on the narrow ground that FYIsms does not have or use an ATDS. More specifically, FYIsms's motion demonstrated that FYIsms's equipment does not have the capacity to randomly or sequentially generate phone numbers as required to establish a violation of section 227(b)(1) of the TCPA. Rather, FYIsms's equipment sends messages only to mobile numbers that users input into FYIsms's website. [*See* FYIsms's Mot. for Summ. J. at 1–2.]

Knowing absolutely nothing about FYIsms, its business model, its practices, or the type of equipment involved before filing his complaint, plaintiff propounded—and received responses to—broad written discovery and took the depositions of two of FYIsms's key personnel. And after obtaining two extensions of time to respond to FYIsms's motion for summary judgment, plaintiff now seeks to delay a ruling on that motion so that he may seek additional and duplicative discovery. Specifically, plaintiff seeks (1) documents detailing the type of equipment FYIsms uses; (2) "unequivocal responses" to several requests for admission; and (3) time to obtain an expert report offering a legal opinion that FYIsms's equipment "fits within the TCPA's prohibitions."

But FYIsms has already provided plaintiff with documents showing the type of equipment FYIsms uses and how that equipment works. Yet, in his 56(d) motion, plaintiff seeks documents a company might have if it possessed an ATDS. The problem for plaintiff is that FYIsms does not have an ATDS and instead uses only off-the-shelf servers, Cisco networking hardware, and internally generated custom software. [Dep. of Rick Perry ("Perry Dep.") at 20:23–21:25, attached as Ex. C to Pltf.'s 56(d) Mot.] FYIsms thus does not have the documents plaintiff claims he needs to successfully oppose summary judgment—indeed, such documents do not exist. Plaintiff's mere speculation that there is some relevant evidence not yet discovered is insufficient to sustain a Rule 56(d) motion. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005) (rejecting 56(d) motion as nothing but mere speculation that a "smoking gun" might exist).

Moreover, plaintiff's 56(d) motion requests "full responses" to requests for admission 41–44. But FYIsms has already unequivocally denied those requests. FYIsms thus cannot deny the requests "more fully." Simply because FYIsms's denials do not help plaintiff's case does not mean that FYIsms's motion for summary judgment must be further delayed.

Finally, an expert report would not create a genuine issue of material fact in this case. More specifically, an expert report cannot resolve the only dispute at issue here—namely, the meaning of "capacity" in the context of the TCPA—because it is a legal question for this Court. In this case, plaintiff alleges FYIsms sent him text messages using an ATDS, which the TCPA defines as something that has the "capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). According to plaintiff, any equipment that *can be programmed* to meet the statutory requirements is an ATDS. [*See* Pltf.'s 56(d) Mot. at 4–5, ¶¶ 12–13.] FYIsms, by contrast,

3

contends that "capacity" has a plain meaning—equipment is not an ATDS if it does not have the current ability or power to store or produce numbers using a random or sequential number generator, or to dial such numbers. *See* Black's Law Dictionary, 8th ed. (2004) (capacity: "The ability or power to do or experience something."). In either case, an expert report cannot assist the Court in defining this term, as "[e]xpert testimony as to legal conclusions that will determine the outcome of a case is inadmissible." *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007). Plaintiff thus cannot proffer an expert to opine that FYIsms's equipment is an ATDS according to plaintiff's interpretation of that term as used in section 227(b)(1) of the TCPA.

For these reasons, plaintiff's 56(d) motion should be denied, and FYIsms's motion for summary judgment should be granted without further delay.

## II.
## PROCEDURAL BACKGROUND

Since this case began, plaintiff has served broad written discovery requests. On April 20, 2011, plaintiff made an oral motion for leave to file an amended complaint, which was granted, and FYIsms's motion to dismiss was denied as moot. FYIsms's motion for summary judgment was continued until May 19, 2011, when plaintiff's Rule 56(d) motion was due.

On April 22, 2011, plaintiff noticed the deposition of FYIsms's CFO, Emmett Mitchell, and at the same time issued a broad Rule 30(b)(6) deposition notice. Mr. Mitchell and FYIsms's 30(b)(6) designee, Rick Perry, were deposed on May 6, 2011, and FYIsms timely responded to plaintiff's discovery requests on May 16, 2011. On May 18, 2011, plaintiff filed his unopposed motion to continue the deadline for his 56(d) motion, which this Court granted, continuing plaintiff's deadline to June 2, 2011. On June 1, 2011, FYIsms answered plaintiff's amended complaint. And on June 2, 2011, plaintiff filed his second motion to continue the deadline on his

4

56(d) motion. Plaintiff ultimately filed his 56(d) motion on June 23, 2011, after two-plus months of discovery had proceeded.

### III.
### LEGAL ARGUMENT

"Rule 56[d] 'is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" *Davis*, 396 F.3d at 886 (quoting *United States v. On Leong Chinese Merch. Assoc. Bldg.*, 918 F.2d 1289, 1294–95 (7th Cir. 1990)). Rather, a party opposing summary judgment must specify the information he could produce as a result of further discovery, and show that such information would create a genuine issue of material fact. *Id*.; *see also Korf v. Ball State Univ.*, 726 F.2d 1222, 1230–31 (7th Cir. 1984).

**A.**     **Plaintiff's Request For Further Documents Is A Mere Fishing Expedition.**

Plaintiff first seeks to continue discovery so that he may "obtain policies and technical documents and data concerning how FYI's . . . systems work." [Pltf.'s 56(d) Mot. at 2, ¶ 5.] Plaintiff's motion provides a list of document categories he "requires" to respond to FYIsms's summary judgment motion. [*Id*. at 4, ¶ 10.] FYIsms, however, has already produced all documents fitting into the categories plaintiff set forth in paragraph 10 of his 56(d) motion. Apparently dissatisfied with the documents he received, plaintiff now seeks to continue his fishing expedition. Because FYIsms does not have an ATDS, however, it does not have documents that plaintiff would need to support his claims.

Moreover, plaintiff noticed a broad 30(b)(6) deposition on the following topics:

- The nature and operation of any equipment involved in sending any text message to 573-289-3459;

5

- The extent and nature of human interaction with any system [FYIsms] use[s] to send text messages, including any text message FYIsms sent to 573-289-3459;

- The extent of human intervention in dialing phone numbers when [FYIsms] send[s] text messages, including those [FYIsms] sent to 573-289-3459;

- [FYIsms's] policies, practices and procedures regarding the sending of text messages to phone numbers from which [FYIsms has] already received a "stop" text.

*See* Plaintiff's Notice of Telephonic Depositions, attached hereto as Exhibit A. FYIsms designated its Vice President of Operations, Rick Perry—who oversees FYIsms's information technology operations—to testify on these topics on FYIsms's behalf. During Mr. Perry's deposition, plaintiff was able to ask any question he wanted regarding the way FYIsms's system operates and how FYIsms sends text messages. Those questions were fully answered. [*See generally* Perry Dep.] It is thus not plausible that—after receiving the documents that FYIsms produced and deposing Mr. Perry—further discovery on the same, discrete issue is going to change anything.

In any event, Rule 56(d) requires that plaintiff set forth ***specific*** evidence he believes will be obtained through further discovery, and explain how that evidence will make a difference in deciding FYIsms's motion for summary judgment. *Davis*, 396 F.3d at 886. Plaintiff's motion does no such thing. It is unclear what plaintiff asserts will be revealed through further discovery, or how that discovery will help him oppose FYIsms's motion. This type of fishing expedition is insufficient to further delay briefing on FYIsms's motion for summary judgment. *Id*. at 885 ("The only reason to believe that additional, relevant evidence would materialize from [further

6

discovery] is the [nonmovant's] apparent hope of finding a proverbial 'smoking gun'…. This, however, is based on nothing more than mere speculation and would amount to a fishing expedition, which is an entirely improper basis for reversing a district court's decision to deny a Rule 56[d] motion.").

**B.      FYIsms Has Already Fully Responded To Plaintiff's Requests For Admissions.**

Plaintiff's next reason for continuing discovery is to obtain "full responses" to requests for admission 41–44. [Pltf.'s 56(d) Mot. at 4–5, ¶¶ 12–14.] FYIsms has already properly and fully denied these requests. Thus, there is nothing left to supplement. Nevertheless, plaintiff apparently takes issue with FYIsms's objections to the requests. Requests 41–44 each ask FYIsms to admit that its equipment "can be programmed" to do various things. FYIsms objected to this language as vague and ambiguous, but nevertheless asserted that FYIsms's equipment "does not have the capacity" to perform the various tasks identified in plaintiff's requests. [*See* Def.'s Resp. to RFAs 41–44, attached as Ex. B to Pltf.'s 56(d) Mot.]

Plaintiff's requests conflate "capacity" with "can be programmed." While FYIsms vigorously disagrees with plaintiff's interpretation of the TCPA as set forth in his 56(d) motion, FYIsms agrees that whether equipment constitutes an ATDS depends on whether it has the *capacity* "to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Contrary to plaintiff's 56(d) motion (¶¶ 13–14), his requests did not ask whether FYIsms's equipment "has the capacity" to perform various functions—which it does not. Instead, plaintiff's requests ask whether the equipment "can be programmed" to perform the various functions. This language is both vague and ambiguous and irrelevant to this case, because "can be programmed" is not the standard under the TCPA. *See* 47 U.S.C. § 227(a)(1).

This distinction is made clear by the following examples:

7

- Assuming an individual were given the appropriate raw materials (metal, wires, glass, plastic, etc.), he or she could create a computer. But no one would argue that the raw materials themselves have the capacity to compute.

- Lake Mead has the capacity to hold approximately 28,537,000 acre-feet of water. *See* "Hoover Dam," Wikipedia, http://en.wikipedia.org/wiki/Hoover_Dam. Presumably, the dam could be modified to hold over 30 million acre-feet of water. But again, no one would argue that Hoover Dam currently has the capacity to hold that much water.

- Similarly, a 2010 off-the-shelf IBM computer does not have the capacity to beat two humans at Jeopardy—but it apparently "can be programmed" to do so. *See* John Markoff, Computer Wins on 'Jeopardy!': Trivial, It's Not, Feb. 16, 2011, http://www.nytimes.com/2011/02/17/science/17jeopardy-watson.html.

Here, FYIsms's equipment does not have the capacity to store or produce numbers using a random or sequential number generator, and to dial such numbers—whether or not it can be programmed to do so is irrelevant. And because FYIsms's equipment does not have the capacity to perform the functions identified in plaintiff's requests 41–44, FYIsms denied those requests. Continuing discovery will not change FYIsms's denials into admissions, and plaintiff's 56(d) motion thus serves no purpose.

C. **Summary Judgment Should Not Be Delayed To Permit Plaintiff To Secure An Expert Report Because Such A Report Will Not Create A Genuine Issue Of Material Fact.**

As FYIsms argued in its motion for summary judgment, there is no genuine issue of material fact regarding whether FYIsms has an ATDS. The facts are what they are—FYIsms has certain equipment that is capable of performing certain functions—and an expert report would

not make any difference. Plaintiff's request for more time to obtain such an immaterial report thus should be denied. *See* Moore's Fed. Prac. & Proc. § 56.102[3].

Plaintiff suggests that his expert will submit a report similar to the report submitted in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). [Pltf.'s 56(d) Mot. at 3, ¶¶ 8–9.] Even assuming plaintiff could submit such a report, it would not create a genuine issue of material fact here. In *Satterfield*, the Ninth Circuit held that there was a genuine issue of material fact whether the telephone system in question had the requisite *capacity* to be considered an ATDS under the TCPA. *Satterfield*, 569 F.3d at 951. But here, plaintiff's putative expert cannot raise such a genuine issue of material fact because FYIsms's equipment does not have the capacity to randomly or sequentially generate numbers, or to dial those numbers. [*See* SOF ¶¶ 13–15.]

Furthermore, as discussed above, the dispute here is the legal issue of whether the TCPA's definition of "capacity" should be given its plain meaning—i.e., "[t]he ability or power to do or experience something," *see* Black's Law Dictionary, 8th ed. (2004)—or interpreted far more broadly to mean "can be programmed." Given this issue, plaintiff's putative expert report would be impermissible in any event. It is wholly inappropriate for an expert to interpret a statute or opine that something does not comply with a statute. *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Plaintiff's expert thus cannot offer a legal opinion that FYIsms's equipment "fits within the TCPA's prohibitions." *See In re Ocean Bank*, 481 F. Supp. 2d at 898 ("Expert testimony as to legal conclusions that will determine the outcome of a case is inadmissible."). Accordingly, plaintiff should not be permitted to avoid summary judgment in order to obtain an expert report that would (a) have no impact on FYIsms's motion for summary judgment, and (b) offer impermissible legal opinions.

9

## IV.
## **CONCLUSION**

For the foregoing reasons, FYIsms respectfully requests that the Court deny plaintiff's Rule 56(d) motion and grant FYIsms's motion for summary judgment.

Dated: July 14, 2011                                Respectfully submitted,


                                                /s/ Alison E. Klingel
                                                   Brian A. Cabianca (AZ Bar No. 016410)
                                                   Alison E. Klingel (CA Bar No. 258194)

SQUIRE, SANDERS & DEMPSEY (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Attorneys for Defendant FYIsms.com, LLC