**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARCO ANNONI, on behalf of himself and others similarly situated, <br>     Plaintiff, <br><br> v. <br><br> FYISMS.COM, LLC, <br>     Defendant. | ) <br> )   1:11-cv-1603 <br> ) <br> )   Judge Feinerman <br> ) <br> ) <br> ) <br> ) <br> )   JURY DEMANDED <br> ) |

**PLAINTIFF'S OPPOSITION TO FYISMS.COM'S
MOTION FOR SUMMARY JUDGMENT**

Defendant FYIsms.com, LLC ("FYI") sent plaintiff six unsolicited "form" text messages that were generated and sent automatically by its dialing equipment and software. FYI has filed a summary judgment motion arguing the discrete point that it did not use an "automatic telephone dialing system" ("ATDS") to send these text messages, arguing that its equipment does not fall within the statutory language in the Telephone Consumer Protection Act, 47 U.S.C. §227(a)(1) ("TCPA"), having to do with storing and calling phone numbers sequentially.

But this position completely ignores *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), where the Seventh Circuit held Federal Communications Commission ("FCC") final orders are controlling, even in the face of contradictory statutory language. The FCC issued a final order on the issue of "whether a predictive dialer constitutes an [ATDS]," and held that any equipment that has the "capacity to dial numbers without human intervention" is a predictive dialer, and is regulated by the TCPA.[1]

---

[1] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC 02-278, 23 FCC Rcd.,. 559 available at 2008 WL 65485 ¶¶12-14 (Jan 4. 2008), referenced herein

As explained herein and demonstrated in plaintiff's responses to FYI's Rule 56.1 statement of fact, there was no human intervention in the sending of the text messages that are the subject of his lawsuit, and the equipment employed by FYI easily meets this standard. This is evident from the defendant's own testimony, and confirmed through the report of plaintiff's cellular and SMS communications expert Randall Snyder.

Further, even if the Court were to find that the language in 47 U.S.C. §227(a)(1) states the correct standard, FYI's equipment still has the requisite capacity. This is also demonstrated through the defendant's own testimony and request for admission responses, and confirmed through the testimony of Randall Snyder.

FYI's motion for summary judgment should be denied.[2]

**I.  Summary of Material Facts.**

FYIsms sent six text messages to plaintiff's cellular telephone. Plaintiff's Additional Material Facts that Preclude Summary Judgment ("AMF") 1. Mr. Annoni has never willingly given FYI permission to send text messages. AMF 2.

In fact, Mr. Annoni has never entered his cellular telephone number in any website he knew to be affiliated or operated by FYI, has never entered his cellular telephone number into any website regarding recipes at all, and did not put the telephone number that is close to his, 573-665-3459 into any website on that date, and did not put his cellular telephone number into any website on that date. AMF 3.

---

as "*In re TCPA* (2008).
2 Additionally, if this Court finds that FYI has waived one-way intervention by moving for summary judgment before class certification has been decided, *Williams v. Lane,* 129 F.R.D. 636 (N.D.Ill. 1990), plaintiff invites the Court to enter summary judgment for plaintiff in addition to

Mr. Annoni was charged $.20 for each of the text messages FYI sent him. AMF 4. Mr. Annoni was also charged $.20 to send FYI a text message demanding that they stop sending him text messages. He did this reluctantly, and only in order to avoid the likely prospect of having to pay more for future incoming and unwanted text messages. AMF 5.

The system FYI used to send text messages to plaintiff is fully automated, and, as it worked at the time it sent the text messages to plaintiff, easily falls into the statutory and the FCC's definition of ATDS. Plaintiff's Response to FYI's Material Fact ("RMF") RMF 13, 14, 22. Furthermore, the equipment both has the *capacity* to "dial telephone numbers without human intervention," and the *capacity* "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." RMF 13, 14, 22.

In sum, the equipment FYI used to send plaintiff the six text messages at issue in this case was an ATDS. RMF 13, 14, 22. Defendant's motion should be denied.

**ARGUMENT**

I. **Legal Standards**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Cedillo v. Int'l Assoc. of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir, 1979). The substantive law of the issues raised by the claims asserted in the complaint

---

denying FYI's motion.

determines what is "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). By these standards, defendants' motion for summary judgment should be denied.

## II. The FCC Standard Applies for Determining Whether Equipment is an ATDS.

FYI argues that the statutory, rather than the broader regulatory, definition of "automatic telephone dialing system" applies. FYI is incorrect. The correct standard under the FCC's operative final orders is that any equipment that has the "capacity to dial numbers without human intervention" falls within the TCPA's reach. *In re TCPA*, ¶¶9-12 (2008); *In re TCPA*, ¶¶131-133; *Griffith v. Consumer Portfolio Services, Inc.,* no 10-cv-2697, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011) (collecting authority).

Congress granted substantial authority to the Federal Communications Commission to issue regulations and final orders as to calls made to cellular telephones like the ones at issue in this litigation. 47 U.S.C. §§ 227(b)(2); 227(b)(2)(C).

In its June 26, 2003, order on reconsideration interpreting the TCPA, the FCC held that any equipment that has the "capacity to dial numbers without human intervention" fell within the strictures of the TCPA. In re TCPA, GC Docket 02-278, ¶ 132 (June 26, 2003). In reaching this conclusion, the FCC made apparent that its use of the word "capacity" as used in the TCPA includes any hardware for which the theoretical possibility of software upgrades could lead to being able to store and produce numbers, and call those numbers:

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*In re TCPA*, CG Docket 02-278, available at 2003 WL 21517853 (July 3, 2003), at ¶131. This order was issued after public comment and consideration. Between September 2002 and the 2005 order on reconsideration, consumers, industry, and state governments filed over 6,000 comments.

This definition survived a motion for reconsideration with the FCC, too. Unhappy with the definition of "capacity" and resulting broad scope of ATDS, on April 26, 2006, the American Collectors Association (a debt collection trade association now known as "ACA International") filed a supplemental submission to its petition for reconsideration of the FCC's interpretation of what kind of "equipment" constituted an ATDS under the TCPA. The ACA's argument was rejected. On January 4, 2008, The FCC issued an order on ACA International's motion for reconsideration, affirming its prior definition of ATDS and predictive dialer as any equipment that has the capacity to dial without human intervention. *In re TCPA,* ¶¶9-11 (2008).

Typically, federal agency regulations are subject to review by a federal District Court pursuant to the "familiar" Chevron deference test. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), citing Che*vron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). However, because of the Administrative Orders Review Act, also known as the "Hobbs Act," properly entered final orders by the FCC are not reviewable by any Court other than through an action against the FCC that originates in the United States Court of Appeals (except the Federal Circuit), or through a motion for reconsideration to the FCC itself. 28 U.S.C. 2342; *Prism Business Media, Inc.*, 606 F.3d at 446; see also, both decisions in Le*ckler v. Cashcall, Inc.*, 554 F.Supp.2d 1025 (N.D.Cal. 2009) vacated, 2008 WL 5000528 (N.D.Cal. Nov.21, 2008).

Thus, under the Hobbs Act, this Court has jurisdiction to enforce FCC orders, but has no authority to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" FCC final orders such as the broad definition of "predictive dialer" or "automatic telephone dialing system" as held by the FCC in *In re TCPA* (2008) and *In re TCPA* (2003). 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). As such, these properly entered final orders are the Law of the Land. *Prism Business Media, Inc.*, 606 F.3d at 446; *Leckler v. Cashcall, Inc.*, 2008 WL 5000528, at *2 (N.D.Cal. Nov.21, 2008); *Hicks v. Client Services, Inc.*, 2009 WL 2365637, at *4-5 (S.D.Fla. June 9, 2009); *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270 (N.D.Ill. May 5, 2010) (summary judgment for plaintiff entered, based upon In re TCPA (2008) definition of "prior express consent"), reconsideration granted, decision as to willfulness aff'd., 2010 WL 6373008 (N.D.Ill. June 17, 2010); *Pollock v. Bay Area Credit Service*, LLC, 2009 WL 2475167, at *3 (S.D.Fla. Aug. 13, 2009).

FYI's equipment has the capacity to dial numbers without human intervention. RMF 13, 14, 22. Not only this, the system (hardware plus software) did, in fact, send messages to plaintiff without any human intervention at all. For example, the "reminder" messages it sent plaintiff were sent automatically and without human intervention, according on a predetermined schedule set by defendant. *Id*. The "confirmation" text message FYI sent plaintiff was an auto-generated response to plaintiff's demand that FYI send him no more messages. RMF 13, 14, 22. Even the consensual subscriber content, which plaintiff never received, is fully automated: "Once we receive the text message [from the subscriber] there is not user involvement to actually look up the response…. On our side, there is not [any human involvement in sending such a text message." RMF 13, 14, 22; Perry Depo at 10.

6

This was also the opinion of plaintiff's expert witness, Randall Snyder. Not only was Mr. Snyder recognized as an expert by the Ninth Circuit in *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009), his opinion given in that case was the deciding factor in reversing the District Court's summary judgment determination for defendant.[3]

Mr. Snyder opined that, based upon his twenty five years of expertise and experience in the mobile and text message industry,

> FYIsms employed and operated an Automatic Telephone Dialing System (ATDS) which has the capacity to dial cellular telephone numbers without human intervention and did, in fact, dial those numbers without human intervention when they sent multiple "double opt-in" reminder text messages to the plaintiff as well as an additional confirmation text message after the plaintiff had requested to be "opted-out."

RMF 13, Snyder Decl at 36.

FYI's dialing system is therefore similar to that which was found to be an ATDS in *Griffith v. Consumer Portfolio Services, Inc.,* no 10-cv-2697, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011). In *Griffith*, the Court found the debt collection agency's dialer to be an ATDS because it had the capacity to dial numbers without human intervention, and because it utilized equipment that uses databases of "known, nonrandom telephone numbers." *Id*. at *3. Similarly, FYI's system stores

---

[3] In addition to being recognized as an expert on dialers by the 9th Circuit, Mr. Snyder developed standards for the Telecommunications Industry Association (TIA). Most notably, he authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between wireline and wireless networks, which is now a fully accredited national standard of the American National Standards Institute. He is the author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. He has been granted several patents on wireless telecommunications networking technology and currently has several additional published patents pending. He has consulted and been employed for many landline and wireless telecommunications companies including McCaw Cellular, AirTouch, AT&T Wireless, Lucent, Nokia, Ericsson, Nextwave, MCI, Sprint and others.

phone numbers in a database, and sends text messages to those numbers at times that are preprogrammed into the system. RMF 13.

Certainly this evidence is sufficient to deny FYI's motion for summary judgment.

### III. FYI's Dialer Also Falls within the Statutory Definition of ATDS.

While it is clear that the FCC's definition of ATDS applies, the motion for summary judgment should be denied even if the Court decides to apply the statutory definition.[4]

The statute, 47 U.S.C. §227(a)(1) defines an ATDS as such:

(1) The term "automatic telephone dialing system" means equipment which has the capacity—

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

As explained in response to FYI's statement of material fact, FYI's telephone system has the requisite capacity: to store numbers to be called, using a sequential number generator, and dial those numbers. RMF 13.

The system stores numbers as used by FYI. Rick Perry testified that FYI's system stores customers' telephone numbers on its database.

> Q: So would it be accurate to say that the telephone numbers for FYI's customers are stored on the database as part of the Dell and/or Cisco networking hardware?
>
> THE WITNESS: Yes.

---

[4] Plaintiff anticipates that FYI will argue that the court should apply the statutory definition because the Ninth Circuit's *Satterfield* decision did so. However, the Seventh Circuit clearly stated in *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), that the Hobbs Act compels courts to apply the FCC standards. *Prism Media* even cites to *Satterfield*, seemingly perplexed by its failure to cite the Hobbs Act, and admonishes the

RMF 13; Perry Depo at 23. And when a customer requests information from FYI, e.g. "tuna salad," its system automatically queries its database to make sure the requesting phone is a subscriber, and then queries another database and automatically sends a text message response. RMF 13; Perry Depo at 8-10.

FYI's system also sends text messages sequentially. Rick Perry testified that the system is programmed to send "confirmation" text messages according to a "schedule." RMF 13; Perry Depo at 16. Mr. Perry also testified that the system is not capable of sending two text messages at the same time; instead, the sending of text messages from FYI's system is a "serial process." RMF 13; Perry Depo at 43.

"Serial" is a synonym for "sequential," particularly when used in terms of computer systems. Webster's Collegiate Dictionary (11th ed. 2003), actually uses the word "sequentially" when it defines serial: "1: of, relating to, consisting of, or arranged in a series, rank, or row <serial order> 2 : appearing in successive parts or numbers <a serial story> … 6 : relating to or being a connection in a computer system in which the bits of a byte are transmitted sequentially over a single wire."

Further, the system dials the numbers that are stored in the database, after they have been called up sequentially. Perry testified that the system causes the text messages to be sent to users' mobile phones. 30:1 to 32:14. Merriam-Webster's Collegiate Dictionary (11th ed. 2003) defines "dial" as "to make a telephone call or connection." Further, the FCC, and all other courts to consider such, have held that text messages constitute calls under the TCPA. *In re TCPA*, ¶165

---

plaintiff for arguing that Satterfield controls, even though it did not do the proper analysis.

(2003); *Satterfield*, 569 F.3d at 953; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1006-08 (N.D.Ill. 2010) (St. Eve, J.).

### IV. FYI's "Equipment" has the "Capacity" Mentioned in Section 227(a)(1).

Even if the Court finds that FYI's equipment does not, as used by FYI, fall within the statutory definition of ATDS, its equipment certainly has the requisite *capacity*. "Capacity" in the TCPA refers to the maximum that the equipment would be able to do, if the software were altered to do so. Dictionary definitions support this reading. Webster's says that capacity means, "the potential or suitability for holding, storing, or accommodating" and "the maximum amount or number that can be contained or accommodating." Merriam-Webster's Collegiate Dictionary (11th ed. 2003). The Concise Oxford English Dictionary (11th ed., 2008 rev.) defines "capacity" as: "the maximum amount that something can contain or produce."

Equipment refers to the physical hardware portion of an ATDS. Webster's defines "equipment" as "the set of articles or physical resources serving to equip a person or thing: as (1) : the implements used in an operation or activity : apparatus <sports equipment>" Merriam-Webster's Collegiate Dictionary (11th ed. 2003).

The FCC's 2003 and 2008 rulings, which are controlling, make clear that it is the "equipment," or hardware, that "capacity" refers to, rather than the system as a whole (i.e. equipment plus software):

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, CG Docket 02-278, available at 2003 WL 21517853 (July 3, 2003), at ¶131 ("*In re TCPA* 2003"). This was reaffirmed in *In re TCPA* 2008, when the FCC quoted the above passage in footnote 23. The distinction between the regulated equipment, and software, is evident in paragraph 14 of the 2008 order, too:

> Most importantly, the Commission said that, to find that calls to emergency numbers, health care facilities, and wireless numbers are permissible when the **dialing equipment is paired with predictive dialing software** and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls.

*Id.* (emphasis added). Judge Grady's opinion in Griffith is in accord: "The statute regulates 'equipment,' not 'dialers.'" *Griffith*, 2011 WL 3609012, at *3.

FYI has admitted that its "equipment," if paired with modified software could indeed: (1) generate random numbers, (2) generate sequential numbers, (3) generate random numbers, and then dial those numbers and (4) generate sequential numbers, and then to dial those numbers. RMF 13; Exhibit 4, request for admission responses. Mr. Perry further testified that FYI's software code could be altered to cause the existing hardware on its telephone system to send a set of text messages, sequentially, at the same time each day. RMF 13; Perry Depo at 42 to 47.

This was also the conclusion reached by plaintiff's learned expert witness, Randall Snyder. Mr. Snyder opined that FYI's "equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and dials these numbers without the prior express consent of the called party." Snyder Decl generally, and ¶36.

As stated in *Griffith*, the FCC "plainly intended to prevent companies from circumventing the statute" by developing sophisticated automated text message sending equipment, and then

trying to wriggle out of liability when they get caught through idiosyncratic interpretations of the statutory language and ignoring the FCC's controlling authority.

**CONCLUSION**

For the forgoing reasons, FYIsms.com, LLC's motion for summary judgment should be denied. Furthermore, if the Court finds that FYI has waived one-way intervention in this class action, plaintiff invites the Court to enter summary judgment for plaintiff. *Griffith*, 2011 WL 3609012, at *4 ("Plaintiffs ask us both to deny [defendant's] motion and to hold for plaintiffs as a matter of law on the same issue. We will grant the request [and] conclude as a matter of law that [defendant] employs an 'automatic telephone dialing system' to call its customers.")

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com